## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHUN YING LI,<br><br>                    *Plaintiff*,<br><br>         v.<br><br>LISA K. HELLER, in her official capacity as<br>Consul General, U.S. Consulate General in<br>Guangzhou, *et al.*,<br><br>                    *Defendants.* | No. 23-cv-3025 (DLF) |

### <u>MEMORANDUM OPINION</u>

Plaintiff Shun Ying Li seeks to enter the United States to marry her American fiancé Maxwell Willis Milligan.  Li applied for a K-1 visa, but her application was placed in administrative processing after an interview at the U.S. consulate in Guangzhou.  Compl. ¶¶ 2–4, 21, Dkt. 1.  Li filed this suit against State Department officials under the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361, seeking a final decision on her visa application.  *Id.* ¶¶ 24–36.  Li contends that the delay she has experienced has been unreasonably long.  *Id.* ¶ 27.  Before the Court is the defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. 8.  For the reasons that follow, the Court will grant the motion and dismiss the complaint under Rule 12(b)(6).

### I.      BACKGROUND

#### A.      Statutory Framework

A noncitizen who "is the fiancée . . . of a citizen of the United States . . . and who seeks to enter the United States solely to conclude a valid marriage with the petitioner" may apply for a

"K-1" nonimmigrant visa.   8 U.S.C. § 1101(a)(15)(K)(i).   The process to obtain a K-1 visa, however, requires multiple steps.   *See Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 90 (D.D.C. 2020). First, the noncitizen's American fiancé(e) must submit a petition, known as a Form I-129F, to the Department of Homeland Security (DHS).   *See* 8 U.S.C. § 1184(d)(1); *I-129F, Petition for Alien Fiancé(e)*,   U.S.   Citizenship   &   Immigr.   Servs.,   https://www.uscis.gov/i-129f [https://perma.cc/JN2T-JP3L].   Second, after DHS approves the petition, it is forwarded to the National Visa Center (NVC).   *See Visas for Fiancé(e)s of U.S. Citizens*, U.S. Citizenship & Immigr.   Servs.,   https://www.uscis.gov/family/family-of-us-citizens/visas-for-fiancees-of-us-citizens [https://perma.cc/Y9RW-UCNB].   Finally, the NVC forwards the visa application to a U.S. Embassy or consulate where the noncitizen fiancé(e) intends to apply for a K-1 visa.   *Id*.   A consular officer is then responsible for interviewing the noncitizen fiancée, reviewing the application, determining the couple's "bona fide intent to establish a life together," and requesting any appropriate background check.   *Id*.

After a noncitizen has "properly completed and executed" a "visa application" and interviewed, a "consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order . . . discontinue granting the visa."   22 C.F.R. § 41.121.   "No visa or other documentation shall be issued" if (1) "it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law"; (2) "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder"; or (3) "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law."   8 U.S.C. § 1201(g).   If the consular officer believes "additional information from sources other than the applicant   may   help   establish   an   applicant's   eligibility,"   he   may   refer   the   application   for

"administrative processing." *Administrative Processing Information*, Bureau of Consular Affs., U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/RNU3-E3FB]. "The duration of the administrative processing will vary based on the individual circumstances of each case." *Id.*

### B.    Factual Background

Maxwell Willis Milligan, a United States citizen, is engaged to Shun Ying Li, a Chinese national.  In October 2021, Milligan filed Form I-129F with USCIS, hoping that Li could enter the United States to get married.  Compl. ¶ 17.  "In February 2023, USCIS approved [Milligan's] visa petition," at which point the U.S. Consulate General in Guangzhou scheduled a K-1 visa interview with Li.  *Id.* ¶¶ 18, 20.  "In May 2023, . . . a consular officer reviewed Shun Ying Li's case" and interviewed her; following that interview, the officer decided to place Li's application in administrative processing.  *Id.* ¶¶ 20–21.  In July 2023, shortly after Li's interview, Milligan's Chinese work visa expired, and he returned to the United States.  *Id.* ¶ 7.

The separation has caused Li "significant anxiety and depression."  *Id.*  Li and Milligan also "used $15,000 of their savings to cover costs" associated with the delay, such as rescheduling their wedding and airplane tickets.  *Id.* ¶ 9.

In October 2023, approximately four months after her interview, Li filed suit against the Consul General in Guangzhou Lisa K. Heller, the Deputy Chief of Mission in China David Meale, and Secretary of State Antony Blinken.  *See id.* ¶ 1.  Li contends, *see id.* ¶ 26, that adjudication of her visa has been "unreasonably delayed" in violation of the Administrative Procedure Act, *see* 5 U.S.C. §§ 555(b), 706(1).  She also seeks, in the alternative, relief under the Mandamus Act.  *See* Compl. ¶¶ 30–35.  In terms of remedy, Li asks the Court to "[m]andat[e] that Defendants process

Plaintiff's visa application within fifteen (15) calendar days of this order or as soon as reasonably possible[.]" *Id.* ¶ 36(b).

## II.   LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal law empowers federal district court judges to hear only certain kinds of cases, and the party asserting jurisdiction bears the burden of establishing that her case falls within the judge's purview. *Id.* When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). A court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (cleaned up). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) does not amount to a specific probability requirement, but it does require

"more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The complaint need not make "detailed factual allegations," but allegations that are merely a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

## III.  ANALYSIS

### A.  Article III Standing

Article III standing has three elements: "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  Contrary to the defendants' suggestions, Reply in Supp. of Def.'s Mot. to Dismiss at 1–4, Dkt. 10, Li has established each of these elements.

As alleged in her complaint, Li has been separated from her fiancé due to the delay in processing her visa.  *See* Compl. ¶ 7.  This Court has previously held that separation from a loved one constitutes a concrete harm.  *See, e.g.*, *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *3 (D.D.C. Feb. 7, 2024); *see also Trump v. Hawaii,* 585 U.S. 667, 698 (2018) (noting that "a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact" and recognizing, more generally, the weight of "bona fide relationship[s]" between Americans and "person[s] seeking to enter the country" for the purposes of establishing Article III standing).  So too here: Li's separation is sufficient to establish injury in fact.  Li also highlights that the delay has caused past and ongoing financial hardship, Compl. ¶¶ 8–9, and this "readily qualif[ies]" as a concrete pocketbook harm, *TransUnion*, 141 S. Ct. at 2204.

The defendants invoke *Kleindienst v. Mandel*, but this case is inapposite.  *See* Reply in Supp. of Def.'s Mot. to Dismiss at 1–2 (citing *Kleindienst v. Mandel*, 408 U.S. 753 (1972)).  In *Mandel*, the Supreme Court held that "an unadmitted and nonresident alien[] ha[s] no constitutional right of entry to this country as a nonimmigrant or otherwise."  408 U.S at 762.  As the Court explained in *Pourabdollah*, however, *Mandel* and its lineage do not diminish Li's alleged injury.  *See Pourabdollah*, 2024 WL 474523, at *4.  *Mandel* establishes "an exception to the doctrine of consular nonreviewability," but it has nothing to do with Article III standing.  *Id.*  Even putting aside the defendants' conflation of standing and consular nonreviewability, Li satisfactorily alleges nonconstitutional injuries.  Along with "[h]arms specified by the Constitution itself," "traditional tangible harms" and "[v]arious intangible harms . . . with a close relationship to harms traditionally recognized" can provide a basis for Article III standing.  *TransUnion*, 141 S. Ct. at 2204.  For the above stated reasons, Li has alleged harms sufficient for standing under Article III.

Li's injuries also fulfill the second and third elements for standing—"causation (traceability) and redressability."  *Whitlock v. U.S. Dep't of Homeland Sec.*, No. 21-cv-807, 2022 WL 424983, at *3 (D.D.C. Feb. 11, 2022).  Considering traceability first, Li's injuries were, at least in part, caused by the defendants.  The State Department and its consular officers "alone [are] responsible" for conducting interviews and rendering decisions on visa applications, and the delay has prolonged the period of separation and dwindled Li's savings.  *Id.*  True, Li's "voluntary decisions" may have exacerbated these injuries.  Reply in Supp. of Def.'s Mot. to Dismiss at 18 n.3.  But any such contribution was marginal and not alleged on the face of the complaint.  Even assuming wedding and flight costs are not fairly attributable to the delay, surely the prolonged separation from her fiancé is.

And these injuries are redressable.  Li alleges that the injuries she faces stem from the State Department's unwillingness to provide her with "a final decision on her application[] within a reasonable time."  Mem. in Opp'n to Defs.' Mot. to Dismiss at 9–10, Dkt. 9.  Accordingly, as in similar cases this Court has considered, the plaintiff's "injuries may be redressed with an order [requiring Secretary Blinken and the Guangzhou Consul General Heller] to complete that review more expeditiously."  *Pourabdollah*, 2024 WL 474523, at *4 (cleaned up); *see Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *3 (D.D.C. Feb. 12, 2024); *Babaei v. United States Dep't of State*, No. 23-1244, 2024 WL 1178453, at *3 (D.D.C. Mar. 19, 2024); *Yaghoubnezhad v. Stufft*, No. 23-cv-03094, 2024 WL 2077551, at *5 (D.D.C. May 9, 2024).

The defendants also argue that since "re-adjudicating [Li's] refused visa application now . . . will not definitively remedy this alleged injury," she lacks standing.  Reply in Supp. of Def.'s Mot. to Dismiss at 3–4 (citing *Naveed v. Blinken*, No. 22-3579, 2023 WL 4142952, at *1 (D.D.C. Jan. 18, 2023)).  But this argument is unpersuasive.  The Court must assume the truth of the allegations contained in the Petition, including the allegation that Li has not received a final decision on her application.  *See* Compl. ¶¶ 22–23.  An order for more expeditious review on the application would redress injuries incurred due to the delay, including, at the very least, Li's separation from her fiancé.  *See Pourabdollah*, 2024 WL 474523, at *4.

The Court will also reject the defendants' request to "dismiss Defendant Secretary of State Blinken from this case because he has no role in re-adjudicating the Visa Application."  Mot. to Dismiss at 5.  "While the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications within a reasonable time, as the APA requires."  *Ahmadi*, 2024 WL 551542, at *4 (cleaned up).

The Court thus concludes that Li has satisfied Article III's standing requirements.

**B.    Consular Non-Reviewability**

The Court also rejects the defendants' argument that consular non-reviewability doctrine bars Li's claims.  Mot. to Dismiss at 6–10.

The Court has, time and again, rejected this argument in visa-delay cases.  *See Pourabdollah*, 2024 WL 474523, at *4–5 (detailing the Court's disagreement with the defendants' reading of *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020 (D.C. Cir. 2021)).  Here, Li alleges that her application is stuck in "administrative processing," which she characterizes not as a "final decision" but rather as a "temporary measure[] signaling that processing is ongoing."  Compl. ¶¶ 21–22.  On a motion to dismiss, the Court accepts this allegation as true.  *See Pourabdollah*, 2024 WL 474523, at *4–5; *Ahmadi*, 2024 WL 551542, at *4; *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 283–87 (D.D.C. 2016).  "[T]he Court is unable to substitute [Li's] allegations" that her application is stuck in administrative processing "with the Secretary's representations that [her] application[] [has] been 'refused.'"  *Pourabdollah*, 2024 WL 474523, at *4 (cleaned up).

"[T]he consular nonreviewability doctrine applies only to final decisions."  *Ahmadi*, 2024 WL 551542, at *4 (quoting *Al-Gharawy v. DHS,* 617 F. Supp. 3d 1, 11 (D.D.C. 2022)).  The defendants have made no such final decision on Li's application.  Absent such a final decision, consular nonreviewability falls out of the picture, and "judicial review of [the] consular officer's delay" is appropriate.  *Id.*

**C.    APA & Mandamus Act Claims**

Although Li's claims survive the defendants' threshold arguments, her APA and mandamus claims fail to state a claim under Rule 12(b)(6).

Under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361, two requirements define unreasonable-delay claims in visa processing petitions. *See Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). A "reviewing court shall . . . compel agency action," 5 U.S.C. § 706(1), only when: (1) "a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); and, (2) "the agency's delay is so egregious as to warrant mandamus," *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (cleaned up).

The Court will assume without deciding that adjudicating Li's application is a discrete action the defendants are required to take, *see Pourabdollah*, 2024 WL 474523, at *6 n.5, notwithstanding the defendants' arguments to the contrary, *see* Mot. to Dismiss at 10–16. The Court thus turns to the second prong: namely, whether the defendants' delay in processing Li's visa has been unreasonably long.[1] To determine whether an agency's delay is unreasonable, the D.C. Circuit has formulated a six-part test synthesized from prior practice:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

---

[1] Plaintiff also argues that, because of the "the fact-intensive nature of the inquiry into whether a delay is unreasonable, . . . it [is] inappropriate to dismiss undue delay claims at the motion to dismiss stage." Mem. in Opp'n to Defs.' Mot. to Dismiss at 14. As outlined in *Pourabdollah v. Blinken*, however, "it is not premature to adjudicate [a petitioner's] unreasonable-delay claim at the motion-to-dismiss stage. Courts in this district have routinely decided whether an agency's delay is unreasonable when processing claims for immigration benefits at this stage." 2024 WL 474523, at *7 n.6.

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (cleaned up). Considering the so-called "*TRAC* factors" together, the Court finds that the delay has not been unreasonable.

### 1.    *TRAC Factors 1 and 2*

"The first two factors are often considered together" because they both concern timing. *Ahmadi*, 2024 WL 551542, at *5 (cleaned up).  In analyzing these factors, the Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Factors one and two favor the defendants.  "Congress has not imposed deadlines for fiancé(e) visas," *Whitlock,* 2022 WL 424983, at *6, and "[a]bsent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine the reasonableness of a visa-application delay, *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).  Such precedent helps establish a governing "rule of reason."  *Id.*  Specifically in the context of fiancé visas, the Court has found delays over a year not unreasonable.  *See, e.g., Whitlock,* 2022 WL 424983, at *6 (finding a delay of eighteen months reasonable); *Schwartz v. United States Department of Homeland Security*, No. 21-378, 2021 WL 4133618, at *3 (D.D.C. Sept. 10, 2021) (finding a nineteen-month delay reasonable); *see also* Mot. to Dismiss at 20–21 (noting that in various visa categories even longer delays have been held reasonable).

When the complaint was filed here, Li had waited four months (now closer to thirteen months).  *See* Compl. ¶ 20; Mot. to Dismiss at 20.  Finding an unreasonable delay here, when less

time has passed than in any of the above examples, would upset the rule prior cases have established.  Indeed, in a recent case, this Court held that a similar four-month delay in a fiancé visa case was reasonable.  *See Lee v. Blinken*, No. 23-cv-1783, 2024 WL 639635, at *5 (D.D.C. Feb. 15, 2024).  Although Li directs the Court to cases finding particular delays were unreasonable, *see* Mem. in Opp'n to Defs.' Mot. to Dismiss at 17–18, all feature far longer delays than that at issue here.  The delay here was thus not "egregious" under the first and second *TRAC* factors.

2.    *TRAC Factor 4*

*TRAC* factor four also carries particular weight.  *Pourabdollah,* 2024 WL 474523, at *7 (citing *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 15 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023)).  "The fourth factor considers the effect of prioritizing one agency action over others.  Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to the head of the queue and simply move[] all others back one space."  *Ahmadi,* 2024 WL 551542, at *6 (cleaned up).

This factor also weighs strongly in favor of the defendants.  Contrary to Li's suggestion, the Court cannot exclusively "focus on the impact of the delay on the plaintiff before it."  Mem. in Opp'n to Defs.' Mot. to Dismiss at 20.  Rather, it must also consider the effects of prioritizing the plaintiff on "agency activities of . . . competing priority."  *In re United Mine Workers of Am. Int'l Union*, 190 F.3d at 549 (cleaned up).  Here, reordering "the queue of applicants seeking adjudication would be inappropriate . . . because there would be no demonstrable net gain in visa processing at large."  *Pourabdollah*, 2024 WL 474523, at *8 (cleaned up).  Placing Li at the front of the line would constitute the exact sort of "judicial reordering[] of agency priorities" upon which precedent frowns.  *Id.* (quoting *Rahman v. Blinken*, No. 22-2732, 2023 WL 196428, at *4 (D.D.C. 2023)).  Because expediting the delayed action for Li could simply foist the delay upon other

applicants, contrary to the State Department's priorities, the fourth TRAC factor also weighs in the defendants' favor.

       3.      *TRAC Factors 3 and 5*

*TRAC* factors three and five favor Li, but not to so great an extent they outweigh the remaining factors.  Factors three and five concern the "health and welfare . . . at stake" and "the interests prejudiced by delay."  *Telecomms. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).  Li alleges the delay has had a significant "negative impact . . . on her life" and "has put [her], her disabled parents, and [her fiancé] in a precarious economic situation."  Mem. in Opp'n to Defs.' Mot. to Dismiss at 19.  Assuming their truth, these allegations support the conclusion that the visa delay has affected Li's and her fiancé's health and welfare.

       4.      *TRAC Factor 6*

The final TRAC factor requires the Court to "determine whether the agency has acted in bad faith in delaying action."  *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023) (cleaned up).  Li concedes that "there is no evidence that defendants have engaged in any improper conduct."  Mem. in Opp'n to Defs.' Mot. to Dismiss at 17.  But "the lack of plausible allegations of impropriety does not weigh against [Li]," so the Court treats this factor as neutral.  *Fakhimi*, 2023 WL 6976073, at *11; *see Ahmadi*, 2024 WL 551542, at *6.

In aggregate, then, the *TRAC* factors suggest "the agency's delay is [*not*] so egregious as to warrant mandamus," meaning Li has also failed to state a claim for unreasonable delay under the APA and Mandamus Act.  *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (cleaned up).

## CONCLUSION

For the foregoing reasons, the Court will grant the defendants' Motion to Dismiss, Dkt. 8.

A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

July 12, 2024